FILED'08 DEC 30 14:20USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN A. LENT,

                       Plaintiff,

           v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

                    Defendant.

Civil No. 07-1059-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

     Plaintiff Karen Lent ("Lent") seeks judicial review of the Social Security Commissioner's

final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has

jurisdiction under 42 U.S.C. § 405(g).

     The Commissioner moved this court to remand for further proceedings to correct errors in

1 - FINDINGS AND RECOMMENDATION

his decision (docket # 27). Lent opposes additional proceedings and seeks remand for the calculation and immediate award of benefits.

For the reasons below the Commissioner's motion should be granted and the matter should be remanded for further proceedings consistent with these findings and recommendation.

## BACKGROUND

Born in 1942, Lent has a high school education. Tr. 132, 153.[1] Between 1972 and 2001 Lent reports work as a bartender, waitress, housekeeper, and cannery line worker. Tr. 166.

Lent alleges disability since April 15, 1994, due to a chronic sinus condition with migraines, high blood pressure, and depression. Tr. 132, 147. After a hearing held September 9, 2004 (Supp. Tr.[2] 691-47), an ALJ found Lent not disabled on December 1, 2004. Tr. 39-45. The Appeals Council reversed and remanded that decision. Tr. 93. The ALJ held another hearing on June 5, 2006 (tr. 638-90), and again found Lent not disabled on June 15, 2006. Tr. 25-33. The Appeals Council denied review of that decision. Tr. 7. Accordingly, the ALJ's June 2006 decision is the Commissioner's final decision now before this court on Lent's appeal.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; 416.2520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Lent challenges the ALJ's evaluation of the evidence and his

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer January 22, 2008 (Docket #10).

[2] Citations "Supp. Tr." refer to indicated pages in the Supplemental Transcript filed by the Commissioner on April 18, 2008 (Docket # 18).

conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If he determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); 416.920(a)(v); 416.920(f); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

3 - FINDINGS AND RECOMMENDATION

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566; 404.1520(g); 416.966; 416.920(g).

## THE ALJ'S FINDINGS

At step two, the ALJ found that Lent had a combination of impairments which satisfied the regulatory definition of "severe" for the purposes of step two of the sequential analysis. Lent's severe impairments include chronic sinusitis, depression, moderate carpal tunnel syndrome, and methamphetamine abuse in partial, sustained remission. Tr. 27. The ALJ found that Lent's migraine headaches, knee pain, and obesity did not independently satisfy the regulatory definition of severe. Tr. 28.

At step three, the ALJ found that Lent's impairments did not meet or equal a listed impairment. Tr. 28-29.

The ALJ evaluated Lent's RFC:

> [T]he claimant has the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently. During an eight-hour day, she can sit, stand and walk for up to six hours. Furthermore, the claimant should avoid even moderate exposure to hazards or to fumes, dust, smoke, etc. Finally, the claimant is limited to simple, routine, repetitive work, not requiring frequent or repetitive contact with the general public.

Tr. 29.

At step four, the ALJ found that Lent could not perform her past relevant work. Tr. 32.

4 - FINDINGS AND RECOMMENDATION

However, the ALJ found that Lent could perform work existing in the national economy at step five

in the sequential proceedings. *Id.* The ALJ therefore found Lent not disabled throughout the period

in question. Tr. 33.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

§ 405(g); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

"Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins*

v. *Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Tylitzki* v. *Shalala,* 999 F.2d 1411, 1413

(9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins,*

466 F.3d at 882; *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the

evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be

upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion.

*Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining

credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,*

53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's RFC, an ALJ must consider all

relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects

of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."

*Robbins,* 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1 545(a)(3),

416.945(a)(3); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996). However, the reviewing court

5 - FINDINGS AND RECOMMENDATION

must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007).

An ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician. *Id.* If the opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). An ALJ may reject portions of a physician's opinion predicated upon reports of a claimant deemed not credible. *Ryan v. Astrue*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008), *Tonapetyan v. Halter*, 80 F.3d 1148, 1149 (9th Cir. 2002).

## **DISCUSSION**

Because the Commissioner concedes his decision cannot be affirmed (docket #27), the court's review is limited to determining whether the ALJ's errors require remand for further proceedings or for an immediate award of benefits.

Lent contends the Commissioner failed to accurately assess her RFC because the ALJ improperly evaluated her testimony, the medical evidence, and the testimony of two lay witnesses. The Commissioner concedes that the ALJ improperly discussed Dr. McDavitt's opinion and improperly rejected the lay witness testimony. Def.'s Br. 6, 11. The Commissioner disputes Lent's remaining challenges and opposes immediate award of benefits.

///

6 - FINDINGS AND RECOMMENDATION

## I.    The ALJ's December 2004 Decision

Lent asserts that the ALJ's April 2006 RFC assessment contradicts his December 2004 RFC assessment and is therefore erroneous. Pl.'s Opening Br., 14.

Res judicata principles, if applied in administrative proceedings, apply to final decisions only. *Chavez v. Bowen*, 844 F.2d 691, 692-93 (9th Cir. 1995). The Appeals Council vacated and remanded the ALJ's December 2004 decision. Tr. 92-95. The ALJ's December 2004 decision was therefore not a final decision, and no principles of res judicata apply. This argument fails.

## II.    Lent's Credibility

Lent asserts that crediting her testimony establishes that she is disabled at step five in the sequential proceedings and concurrently entitled to benefits. Pl.'s Opening Br., 13. The Commissioner maintains that the ALJ's credibility finding was appropriate and that it should be affirmed. Def.'s Br. 14-17.

The ALJ gave numerous reasons for questioning Lent's credibility. Tr. 29-30. The ALJ first found Lent's "allegations as to the existence of her symptoms . . . only partially supported by the medical record." Tr. 29. The ALJ also found her allegations "disproportionate and not supported by the objective medical findings or any other corroborating evidence." *Id.* The ALJ subsequently noted that, following surgeries, Lent received conservative treatment for her sinus problems, and that Lent required less treatment for this impairment since 2004. *Id.*

The ALJ also noted that clinical records showed contradictory reports regarding Lent's "unkempt appearance," and that Lent's depression improved after she ceased using methamphetamine. *Id.* The ALJ also noted Lent's inconsistent statements regarding her drug use and that Lent stopped working in 1994 because her employer went out of business. Tr. 30.

Finally, the ALJ discussed Lent's activities of daily living, the specifically noting that Lent cared for herself and a pet, and performed regular household chores. *Id.*

## A.  Standards: Credibility

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins,* 466 F.3d at 883.

## B.  Analysis

Lent contends that the ALJ's finding is erroneous. Lent specifically challenges the ALJ's reference to her activities of daily living, medical record, work history, and inconsistent statements.

### a.  Activities of Daily Living.

The ALJ cited Lent's activities of daily living, including daily maintenance of personal

hygiene, cooking for herself, caring for her pets. Tr. 30. The ALJ also cited Lent's weekly completion of household chores such as laundry, vacuuming, yard work, and gardening. *Id.* Lent asserts that the ALJ erroneously relied upon her activities of daily living because "the ALJ did not, and cannot, claim that any of the named activities indicates [sic] an ability to sustain full-time work at the medium exertional work level, which is the only issue that is relevant here." Pl.'s Opening Br. 12.

The ALJ may consider whether a claimant's daily activities are inconsistent with the claimant's alleged disability. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's citation to Lent's daily activities is appropriate under this standard and should be sustained. Furthermore, this court may not second-guess such analysis. *Id.*

### b.    Medical Record

The ALJ noted Lent's medical record in his credibility discussion. The ALJ first found Lent's alleged symptoms "disproportionate" to symptoms documented in her medical record. Tr. 29. Here the ALJ specifically noted treatment of Lent's sinus condition, finding it "conservative" with the "exception of sinus surgery in March 2000." *Id.* The ALJ also noted that Lent's presentation to mental health providers improved following her methamphetamine use cessation. *Id.*

Lent correctly asserts that the ALJ may not require medical evidence to corroborate the degree of symptom testimony the claimant proffers. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen*, 80 F.3d at 1282)). However, the ALJ may consider a claimant's medical record in conjunction with other credibility factors. *Smolen*, 80 F.3d at 1284. The ALJ's citation to Lent's sinus and mental health treatment, in conjunction with other credibility factors, was therefore appropriate and should

be affirmed.

The ALJ may also consider a claimant's treatment history. *Id.* A claimant may submit reasons for failing to seek treatment, most notably poverty. 20 C.F.R. §§ 404.1530(c); 416.930(c); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). However, Lent has not asserted such reasons, nor does the record support such an analysis. Therefore, the ALJ appropriately considered Lent's course of treatment in his credibility determination. The ALJ's reference to the medical record should be affirmed.

### c.    Work History

The ALJ noted that Lent's last job ended when her employer went out of business, and inferred that Lent stopped working for this reason rather than because of her alleged disability. Tr. 30. The ALJ may cite a claimant's work history in his credibility findings. *Smolen*, 80 F.3d at 1284. In doing so, the ALJ may consider that a claimant ceased working because of termination unrelated to disability. *Bruton v. Massinari*, 268 F.3d 824, 828 (9th Cir. 2001).

Lent now contends that the "the record clearly indicates that Lent's sinusitis and depression did not significantly impact her life until 1998 or 1999, several years after her last successful employment ending in 1994." Pl.'s Opening Br. 12. Lent alleges disability beginning April 15, 1994. Tr. 132. In making this allegation, Lent stated that she became unable to work on that date due to her sinus surgeries and depression, as well as high blood pressure, migraine headaches, and an ear disorder related to her sinus impairment. Tr. 147. Lent's present submission therefore contradicts and undermines her own application. This submission should not be sustained.

Regardless, the ALJ's consideration of a claimant's work history relates to a claimant's

motivation to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). A poor work history may therefore undermine a claimant's credibility. *Id*; *see* also *Smolen*, 80 F.3d at 1284 (citing a claimant's work history as a factor which may support an ALJ's credibility finding). Lent asserts that, because the ALJ found she could not perform her past relevant work at step four in the sequential proceedings, the ALJ should not rely upon her poor work history. No authority supports this proposition, nor does logic compel the conclusion Lent urges on this point. For these reasons, the ALJ appropriately cited Lent's work history in assessing her credibility.

### d.    Inconsistent Statements and Drug Use

Finally, the ALJ noted that Lent made inconsistent statements regarding her drug use. Tr. 30. The ALJ's credibility findings may note a claimant's inconsistent statements. *Thomas*, 278 F.3d at 959. This standard specifically applies to inconsistent statements regarding substance abuse. *Id.*; *Verduzco v. Apfel*, 188 F.3d 1087, 1990 (9th Cir. 1999). The ALJ's reference to Lent's inconsistent statements regarding her methamphetamine use should be affirmed.

### C.    Conclusion: Lent's Credibility

This court must affirm an ALJ's credibility decision if it is appropriately based upon substantial evidence. *Rollins*, 261 F.3d at 857. Lent fails to show that the ALJ's decision is unsupported by substantial evidence or based upon the correct legal standards. For the reasons above the ALJ's credibility decision should therefore be affirmed.

## III.    Medical Evidence

Lent challenges the ALJ's evaluation of the opinions of treating neurologist Dr. Davidson, treating psychiatrist Dr. Suckow, examining psychologist Dr. Kallemeyn, and medical expert Dr.

McDavitt.

### A.    Standards

An ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician. *Id.* If the opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Thomas*, 278 F.3d at 956-57.

### B.    Discussion

### a.    Treating Psychiatrist Dr. Suckow

Lent contends that the ALJ's assignment of "minimal weight" to Dr. Suckow's opinion is erroneous. Pl.'s Br. 8. Lent specifically asserts that the ALJ erroneously rejected Dr. Suckow's opinion because (1) Dr. Suckow relied upon Lent's own reports in reaching his conclusions, and (2) the ALJ noted Dr. Suckow's unvarying and unsupported Global Assessment of Functioning scores ("GAF").[3] Pl.'s Opening Br. 9.

Dr. Suckow treated Lent between September and October and 2004. Tr. 501-05. He performed an intake evaluation on September 14, 2004, and diagnosed "nonpsychotic" major depressive disorder. Dr. Suckow initially assessed a GAF of 40. Dr. Suckow based this evaluation

---

[3]The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision 2000) 32-34.

upon Lent's reporting and a clinical examination. Tr. 501. Dr. Suckow subsequently saw Lent for medication management on three occasions in September and October 2004 (tr. 503, 505-06), and continued to treat Lent at approximately one-month intervals until April 2005. Tr. 553-59. Dr. Suckow assessed a GAF of forty on each of these occasions.

The ALJ noted Dr. Suckow's treatment of Lent and also noted that Dr. Suckow "apparently relied quite heavily on the subjective reporting of symptoms and limitations provided by the claimant." Tr. 30. The ALJ concluded, "Moreover, Dr. Suckow's opinion frequently contrasts sharply with the other evidence of record –including his own clinical notes– which renders it less persuasive." Tr. 30-31. Here the ALJ noted that Dr. Suckow did not vary his GAF score over time, despite documenting Lent's improvement and methamphetamine use cessation. Tr. 30.

The ALJ may reject physician opinions predicated upon reports of a claimant found not credible. *Tomassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ appropriately did so.

The ALJ may also reject physician opinions unsupported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The record shows that Dr. Suckow provided no explanations for his GAF assessments or for sustaining his assessment notwithstanding Lent's improvement over time. Tr. 503, 505-06.

For these reasons the ALJ's analysis of Dr. Suckow's opinion should be sustained.

**b.    Examining Psychologist Dr. Kalleymeyn**

Lent now contends that the ALJ gave "no reasons" for rejecting examining psychologist Dr. Kalleymeyn's opinion, and that Dr. Kalleymeyn's opinion establishes disability. Pl.'s Opening Br.

7.

Dr. Kalleymeyn evaluated Lent on May 5, 2003. Tr. 395-400. Dr. Kalleymeyn assessed major depressive disorder, dysthymic disorder, and a rule-out pain disorder diagnosis. Tr. 400. Dr. Kaleymeyn based her assessment upon Lent's report and a clinical examination. Tr. 395-400. Dr. Kalleymeyn concluded that, based upon Lent's report, Lent could understand and remember simple instructions, but would "likely" experience difficulty "concentrating and persisting with tasks at this time." Tr. 400. Dr. Kalleymeyn also stated that Lent would "likely have difficulty with social demands in a work setting." *Id.*

The ALJ noted Dr. Kalleymeyn's May 3, 2003, neuropsychological examination. Tr. 30. The ALJ also noted Dr. Kalleymeyn's depression diagnosis. *Id.* Finally, the ALJ noted Dr. Kalleymeyn's GAF assessment of 52, and found that such a score indicates a "moderate impairment in social functioning." Tr. 30.

### i.    "Marked" Restrictions

Lent asserts that the ALJ erroneously rejected Dr. Kalleymeyn's opinion that Lent's reported pain and depression "markedly" affected Lent's ability to perform daily activities, and that this characterization establishes that Lent meets Listing 12.04B at step three in the sequential proceedings. Pl.'s Opening Br. 7.

Lent's submission overlooks Listing 12.04B's requirement that a claimant satisfy both "A" *and* "B" criteria, or, alternatively, "C" criteria. Marked restriction in daily living, social functioning, and concentration, persistence, and pace, if present, satisfies the "B" criteria only. 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.04. A claimant must additionally fulfill the "A" criteria, which requires

documentation of "persistence, either continuous or intermittant" of various affective disorders with specified clinical characteristics. 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.04(A).

Lent's submission does not establish the manner in which she meets both the "A" and "B" elements of Listing 12.04. This court therefore cannot find that Dr. Kalleymeyn's opinion regarding the "B" criteria establishes that Lent meets Listing 12.04.

### ii.    Workplace Limitations

Lent finally asserts that Dr. Kalleymeyn's opinion precludes work in the national economy identified by the ALJ at step five in the sequential proceedings. Pl.'s Opening Br. 7. The Commissioner asserts that the ALJ's RFC assessment encompassed the limitations Dr. Kalleymeyn described. Def.'s Br. 8.

### 1.    Simple Work

The ALJ's RFC included restriction to "simple, routine, repetitive work, not requiring frequent or repetitive contact with the general public." Tr. 29. Dr. Kalleymeyn stated that Lent could follow simple instructions. Tr. 400. The ALJ's finding regarding simple work is therefore consistent with Dr. Kelleymeyn's opinion. This finding should be affirmed.

### 2.    Concentration, Persistence, and Pace

The ALJ found that Lent experienced "moderate" difficulties in maintaining concentration, persistence, and pace. Tr. 31. Dr. Kalleymeyn noted that Lent would "likely" experience difficulty in this area. Tr. 400. The ALJ's finding is again consistent with Dr. Kalleymeyn's opinion and should be affirmed.

In summary, Lent fails to articulate reversible error in the ALJ's review of Dr. Kalleymeyn's

opinion.

### c.    Neurologist Dr. Davidson

Lent contends that the ALJ again "implicitly rejected" neurologist Dr. Davidson's opinion. Pl.'s Opening Br. 8. Lent specifically asserts that the ALJ failed to consider Dr. Davidson's carpal tunnel and cubital tunnel diagnoses, and failed to include Dr. Davidson's range of motion limitations in Lent's RFC assessment. *Id.* The Commissioner asserts that Dr. Davidson's findings do not establish restrictions precluding jobs identified by the vocational expert. Def.'s Br. 10.

The ALJ did not cite Dr. Davidson's opinion. The court must therefore determine the effect of the ALJ's omission.

Dr. Davidson treated Lent on December 31, 2002. Tr. 381-83. At this time he diagnosed headaches with dietary precipitants. On January 6, 2003, Dr. Davidson performed nerve conduction testing and assessed moderate right carpal tunnel syndrome in Lent's right wrist and mild right cubital tunnel syndrome in Lent's right elbow. Tr. 387. Dr. Davidson concluded that Lent should wear an ace bandage at night for her cubital tunnel syndrome, and avoid trauma and repetitive hyperflexion to the elbow during the day. Dr. Davidson did not state how long these measures should be in place, but stated that they were to "help hasten recovery." *Id.*

Dr. Davidson treated Lent a third and final time on February 24, 2003. Tr. 377. On this date Dr. Davidson noted "mild right carpal tunnel syndrome" and "mild right cubital tunnel syndrome." Dr. Davidson made no indication of ongoing treatment recommendations or range of motion limitations. *Id.*

Dr. Davidson's opinion does not establish disability because Dr. Davidson does not indicate

if Lent's restricted range of motion would meet or exceed the Commissioner's requirement that disabling conditions last twelve months or longer. 20 C.F.R. §§ 404.1509; 416.909. Therefore, the Commissioner must properly determine the effect of Dr. Davidson's opinion upon remand.

### d.    Medical Expert Dr. McDavitt

Psychiatrist Dr. McDavitt testified at Lent's April 2006 hearing. Tr. 647-67. The ALJ evaluated Dr. McDavitt's testimony:

> Dr. McDavitt . . . testified at the hearing that he had reviewed the entire medical record in this case, and that based upon this review he was of the opinion claimant has chronic sinus problems, moderate carpal tunnel syndrome and chronic depression. He also noted that she had a ten-year history of daily methamphetamine use, which ended in February 2005. The undersigned adopts Dr. McDavitt's opinion, and finds that [sic] these to be severe impairments . . .

Tr. 28. The ALJ also noted Dr. McDavitt's testimony regarding Lent's post-traumatic stress disorder ("PTSD") diagnosis, and concluded that Lent's PTSD was non-severe. *Id.*

Lent asserts that Dr. McDavitt's testimony establishes that she meets a listed impairment at step three in the sequential proceedings. Pl.'s Opening Br. 6. Lent also asserts that Dr. McDavitt established correlations between her impairments and her symptom testimony. *Id.* at 7. The Commissioner acknowledges that the ALJ incorrectly characterized Dr. McDavitt's testimony, and that Dr. McDavitt's testimony was internally contradictory. Def.'s Br. 6. Because the Commissioner concedes that Dr. McDavitt's testimony was not clear, this court need only determine whether Dr. McDavitt's testimony supports an immediate award of benefits or remand for further proceedings.

Dr. McDavitt first testified that the medical record is scarce. Tr. 647. Dr. McDavitt repeatedly stated that Lent's chronic methamphetamine use affected her functioning and her mental

health assessments. Tr. 647, 650-51, 653, 657, 662. Here Dr. McDavitt noted that Lent's daily methamphetamine use certainly would have affected psychological functioning. Tr. 653. Dr. McDavitt also stated that Lent's reported symptoms and functioning improved when she stopped using methamphetamine. Tr. 655.

Contrary to Lent's assertion, Dr. McDavitt's testimony does not establish that Lent meets a listed disorder at step three in the sequential proceedings. Dr. McDavitt stated that, "if we take [Dr. Suckow's opinion] as credible, she would have equaled the listing of depression and post traumatic stress from about the time she stopped the amphetamine, sometime in January 2005." Tr. 649. This statement is predicated upon Dr. Suckow's report, which the ALJ properly rejected for the reasons discussed above, and does not conclusively establish that Lent met the listing.

Dr. McDavitt's testimony also does not establish that Lent's depressive disorder was unaffected by her methamphetamine use. To the contrary, Dr. McDavitt repeatedly cited Lent's methamphetamine use throughout his testimony, indicating that it would be very difficult to distinguish the effects of methamphetamine use from the effects of a pre-existing depressive condition. Tr. 647, 650-51, 653, 657, 662. Finally, Dr. McDavitt stated that Lent "never really reached the level of really severe incapacitating depression on a regular basis, on a steady basis," regardless of her methamphetamine use. Tr. 652. Lent's assertion that Dr. McDavitt's testimony establishes a listing-level depressive disorder independent of Lent's methamphetamine abuse therefore fails.

Lent also contends that the ALJ again "implicitly rejected" Dr. McDavitt's testimony that Lent's reported limitations stemming from her knee and headache pain would affect her residual

functional capacity. Pl.'s Opening Br. 7. Dr. McDavitt affirmed that these reported symptoms "in purpose of residual functioning, I would stay that [they] might interfere, yes." Tr. 666. This statement does not point to any specific limitations arising from Lent's knee and headache pain. For this reason Dr. McDavitt's opinion shows no functional limitations that this court may credit.

Lent finally asserts that Dr. McDavitt's testimony regarding her knee and headache pain supports a finding that she is credible. Pl.'s Opening Br. 7. The ALJ's finding regarding Lent's credibility should be affirmed for the reasons above. Dr. McDavitt's opinion does not establish that the ALJ's findings regarding Lent's credibility are erroneous.

### C.    Conclusion: Medical Source Statements

The ALJ appropriately reviewed the opinions of Drs. Suckow and Kalleymeyn. The ALJ's assessment of the opinions of Drs. Davidson, and McDavitt is not based upon the proper legal standards. These errors must be addressed upon remand, discussed below.

## IV.    Lay Testimony

The ALJ rejected the testimony of the "claimant's witnesses," which he did not identify, because lay witnesses do not have medical or vocational expertise. Tr. 31. The Commissioner concedes (Def.'s Br., 11), and the court agrees, that the ALJ's evaluation of lay testimony submitted by Stephanie Evans and Dorris Harris should not be sustained. Therefore the court must determine the effect of the ALJ's omission.

### a.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3), 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give germane reasons for rejecting lay testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Silent omission of lay testimony is never harmless, unless the reviewing court can confidently conclude that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006).

This standard does not, however, direct the reviewing court to credit all erroneously rejected lay testimony. The reviewing court may credit lay testimony if the record shows that crediting such testimony, in conjunction with the medical evidence, establishes workplace limitations resulting in disability. *Schneider v. Comm'r*, 223 F.3d 968, 976 (9th Cir. 2000). However, testimony alone never establishes disability. 20 C.F.R. §§ 404.1508; 404.1527(a); 404.1529(b); 416.908; 416.927(a); 416.929(b). Lay testimony must always be consistent with medical evidence and cannot establish limitations beyond those supported by the medical record. *See Lewis*, 503 F.3d at 512 (affirming an ALJ's rejection of lay testimony in part because it was inconsistent with the medical evidence).

### b.    Testimony of Stephanie Evans

Stephanie Evans submitted two separate third-party reports to the record on October 30, 2002 (tr. 174-85) and on April 5, 2003. Tr. 190-201. On October 30, 2002, Evans reported that Lent goes to the grocery store weekly, visits friends and relatives every two months or "once in a while," and leaves her house one time per week. Tr. 175. Evans reported that Lent participates in no social activities. *Id.* In response to a question asking if Lent's conversations and behavior are normal,

Lent made a mark between "yes" and "no" and explained that Lent "can't think" due to her "condition [which] hurts her badly." Tr. 176. Evans also reported that Lent "sometimes" listens to the radio (tr. 178) and watches television, and can remember and discuss programs watched. Tr. 177. Evans stated that Lent "sometimes" drives, but also indicates that this activity is limited "because of head pressure." *Id.* Evans also indicated that Lent cannot drive in unfamiliar places and cannot drive safely. Evans stated that Lent does "yard work [sic] permitting" (tr. 178) for exercise but that she does not do that often, though she gardens once a week for "about an hour." Tr. 179. Finally, Evans stated that Lent sometimes sleeps all day and prepares simple meals. Tr. 180. Evans stated that Lent's performs personal hygiene daily, but requires reminding to do this. Tr. 181.

On April 5, 2003, Evans completed a second third-party report, adding that Lent is argumentative because of her head and sinus pain (tr. 192), and can no longer drive due to dizziness and head pain. Tr. 193. Evans also stated that eating makes Lent tired, and that Lent showers three to four times a day and does not need to be reminded to do this. Tr. 197. Evans again stated that Lent does yard work once a month and "sometimes" performs household chores. Tr. 197. Finally, Evans stated that Lent is very depressed due to her ongoing sinus pain. Tr. 201.

### c.    Testimony of Doris Harris

Dorris Harris submitted a letter to the record on April 5, 2006. Tr. 232-33. Harris stated that Lent has become very depressed "over these past years." Tr. 232. Harris stated that Lent stays in bed for days in conjunction with this depression, and does not attend to personal hygiene. *Id.* Harris also stated that though she has not seen Lent frequently, Lent has reported frequent headaches, which Harris thought might be weekly. Tr. 233. Harris finally stated that she once observed Lent vomit

in a car due to a headache. *Id.*

### d.    Analysis

Lent asserts that the improperly rejected testimony establishes disability because both Evans and Harris stated that Lent must remain in bed at least once per week. Pl.'s Opening Br., 13.  The vocational expert testified that an individual missing work two or more days per month would be unable to maintain competitive employment. Tr. 689. The Commissioner asserts that crediting this testimony would be "premature" because the entire record must be reexamined. Def.'s Br. 11.

Testimony alone never establishes disability.  20 C.F.R. §§ 404.1508; 404.1527(a); 404.1529(b); 416.908; 416.927(a); 416.929(b).  Because the ALJ cited and did not omit the lay testimony, the *Stout* standard regarding silent omission does not apply.  When the ALJ erroneously rejects, but does not omit, the lay testimony, the reviewing court may credit that testimony when crediting that testimony establishes disability in conjunction with medical evidence supporting disability. *Schneider*, 223 F.3d at 976.

Here, the ALJ must reassess the medical record for the reasons discussed above.  Therefore, this court cannot determine the extent that the lay testimony is consistent with the medical record and for this reason it should not be credited.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)(*cert. denied*, 531 U.S. 1038 (2000)).  The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award

of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* (quoting *Smolen,* 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill,* 12 F.3d at 919).

The ALJ erred in assessing the opinions of Drs. Davidson and McDavitt and the testimony of Evans and Harris. However, the improperly assessed evidence does not establish disability for the reasons discussed in each instance above. In such circumstances, crediting the improperly rejecting testimony and awarding benefits is inappropriate. *Connett,* 340 F.3d at 876. Therefore, the matter should be remanded for further proceedings.

The ALJ must re-evaluate Lent's RFC in light of the improperly rejected evidence and, if necessary, subsequently obtain new testimony from a vocational expert. I note that the record shows that Lent used methamphetamine until 2005. Because Lent's drug use occurred during the period during which she now claims disability, if, upon remand, the ALJ reaches a finding that Lent is disabled, he must then properly evaluate his findings in light of Lent's methamphetamine abuse during the period she claims disability pursuant to 20 C.F.R. §§ 404.1535; 416.935.

## **RECOMMENDATION**

The Commissioner's decision that Lent did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is not based upon correct legal standards

or supported by substantial evidence. The Commissioner's motion to remand (docket #27) should

be granted and the matter should be REMANDED for further proceedings consistent with these

Findings and Recommendation.

### SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for

review. Objections, if any, are due January 13, 2008. If no objections are filed, review of the

Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of

the objections. If objections are filed, review of the Findings and Recommendation will go under

advisement upon receipt of the response, or on the latest date for filing a response.

IT IS SO ORDERED.

Dated this 30th day of December, 2008.

JOHN V. ACOSTA
United States Magistrate Judge